## State of Iowa v. Frank Sigler, Appellant.

**Indictment:** CHARGE THAT WEAPON WAS UNKNOWN TO GRAND JURY: *Exhibition of weapon before trial jury.* Where an indictment for murder charged that the assault was committed with a deadly weapon, the description of which was unknown to the grand jury, and the assault was with a stick of wood, which was before the grand jury, it was not error to permit the stick to be exhibited and examined before the petit jury.

**Misconduct in Argument:** Where, on a prosecution for murder, the county attorney in his closing, made prejudicial remarks about the defense of insanity interposed, which were withdrawn on the court's admonition, and the court instructed the jury to disregard them, a further remark by the attorney that the county attorney or grand jury did not wish to punish an irresponsible man, though improper on the ground that the issue of insanity was not before the grand jury, will not be deemed prejudicial.

**Insanity:** JURY QUESTION. On a prosecution for murder, where the defense of insanity was pleaded, a number of witnesses acquainted with the defendant gave their opinions, based on his conduct and appearance, that he was of unsound mind, and two experts gave the same opinion on hypothetical questions embracing matter of evidence. Deceased and accused were friendly, and the killing occurred without any provocation; the accused on being requested by deceased to head off some

cattle, picking up a club, and threatening to smash deceased unless he went away, and hitting deceased when he asked if accused was crazy, the accused being sensitive on this point on account of having a brother in the asylum. The state pro· duced witnesses, however, who testified to accused's sanity. *Held*, that the question of sanity was for the jury.

*Appeal from Fremont District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, OCTOBER 1, 1901.

THE defendant was indicted for the crime of murder, in that he did "wilfully, feloniously, deliberately, premeditately, and of his malice aforethought" kill and murder William Shultz. Upon trial had he was found guilty of manslaughter, and judgment of imprisonment in the penitentiary for a term of six years was rendered against him, from which he appeals.—*Affirmed.*

*W. E. Mitchell* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Chas A. Van Vleck,* Assistant Attorney-General, for the State.

GIVEN, C. J.—I. The indictment charges that the assault was committed "with a deadly weapon, the particular description of which is to this grand jury unknown." On the trial it appeared that the assault was committed with a stick of wood, which was identified and exhibited, and which it was shown was before the grand jury. Appellant's counsel insists that it was error to permit the stick to be identified or exhibited before the jury, for the reason that it is not described in the indictment, and because it was before the grand jury, and might have been particularly described in the indictment. The indictment is sufficient on the face. Code, sections 5280, 5292. See, also, *State v. Seamons,* 1 G. Greene, at page 421. The fact that the weapon produced and identified on

the trial was before the grand jury did not necessarily require that it should be described in the indictment. For aught that we can know, the grand jury may have been in doubt as to its being the weapon with which the assault was made, and, if so, properly refrained from giving a description of it.

II. Appellant's counsel complains of a number of rulings admitting evidence over his objection. We have examined each of these complaints with care, and come to the conclusion that none of the rulings complained of were erroneous, or prejudicial to the defendant. It also urged that appellant was prejudiced by certain remarks of the court in announcing the rulings, and that the remarks indicated to the jury a leaning upon the part of the court against the defendant. It was the duty of the presiding judge to so far direct the course of the examination as to keep it within proper bounds, and it was to this end that the remarks complained of were made. We do not think that the action of the judge indicates a leaning against the defendant, as claimed, but, on the contrary, a studied purpose throughout to give the defendant a fair and impartial trial. This complaint of counsel arises rather, we think, from the commendable zeal with which he has stood for his poor, impecunious, and unfortunate client than from any fault in the court's conduct of the trial. Counsel for the state, in the closing argument, in referring to the fact that the defense of insanity was introduced, remarked to the effect that this defense is a last resort when there is none other. The court admonished counsel that he ought not to comment in that manner, and directed the jury to give no attention or weight to the remark, whereupon counsel said: "I wish to withdraw all that I have said on this question of bias on the subject of the plea of insanity." Following this, counsel remarked to the effect that the people, the witnesses, and officers did not desire that an irresponsible or insane man should be punished. "Do you think that the

county attorney, or the grand jury of this county—" Defendant's counsel objected on the ground that the question of insanity was not before the grand jury, and the court remarked, "Mr. Ferguson, I wouldn't comment on what the grand jury has done." Conceding the remark to be improper, we think, in view of the admonitions of the court, the defendant was not prejudiced thereby.

III. There was not, and under the evidence given cannot be, any doubt but that this defendant killed William Shultz. The only defense made is that of insanity, and the material question in the case is whether, under the evidence, the verdict should be sustained. A number of witnesses who were acquainted with the defendant, some from childhood and others in later years, gave their opinions, based upon his conduct and appearance, as related by them, that he was of unsound mind. Two experts in response to hypothetical questions embracing matters of which there is evidence, gave their opinion that he was of unsound mind. The circumstances attending the assault tend to support the defense. The assault was made upon one with whom defendant was apparently friendly, and without any real provocation. The defendant, the deceased, and one Ellsworth Phares were engaged in separating cattle. The defendant and deceased were on opposite sides of a fence, and about 20 feet apart. Mr. Phares, the only person present, testifies in substance as follows: "Mr. Shultz says, 'Head the cattle.' Sigler made no reply. Shultz said, 'Frank, why don't you head the cattle?' Sigler said, 'We won't run these cattle.' He started to walk after the cattle about twenty or thirty feet. Shultz said, 'Why don't you head the cattle, Frank?' Sigler said, 'You go home, and tend to your business, and quit running me.' Sigler was by me when he said that. The cattle went north. Sigler then turned towards Shultz. He says, 'Frank, I ain't trying to run you.' Sigler says, 'Go off, and attend to your own business, or I will smash your face.' He said

that to Shultz. He walked straight towards the fence. He picked the club up off the ground when he told Shultz to go off and attend to his own business. He picked up the club about fifteen feet from the fence. I was standing about five feet from the club. Sigler walks straight towards Mr. Shultz, and he says, 'You go off, and tend to your own business, or I will smash your face.' Shultz says, 'Why, Frank, I ain't trying to run your business; are you crazy?' Sigler says, 'Don't you call me crazy.' Shultz says, 'Why, Frank, are you crazy?' Mr. Shultz says, 'Frank, you won't hit me; are you crazy?' Sigler says, 'Don't you call me crazy,' and struck him with the club." It is evident that deceased meant no offense by saying, "Why, Frank, are you crazy?" but that remark seems to have been regarded as highly offensive by the defendant, probably because he had a brother in the asylum, and was particularly sensitive as to such a remark. The state called a number of witnesses who were acquainted with the defendant, and who had opportunity for observing his conduct and appearance, who gave their opinions, based upon facts stated by them, that he was a man of sound mind. It will serve no good purpose to here discuss this evidence at length. The instructions as to this defense were quite full, clear, easily understood, and are not complained of; and, as stated by the lower court in passing upon the motion for a new trial: "The jury passed upon that question. It was their province to do so. I feel that it was a strong jury, and I do not feel that I can disturb their verdict." While it may be true, as contended, that the learned judge presiding had doubts on the question of defendant's mental responsibility, yet it was for the jury to apply the doctrine of doubt, if any existed. With the conflict there is in the evidence it cannot be said that the verdict was the result of passion or prejudice, but, as we view it, it must have been arrived at after a careful and unprejudiced deliberation upon the evidence. It follows, from the conclusions announced, that the judgment of the district court must be AFFIRMED.